UNITED STATES DISTRICT COU8RT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN LIVINGSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 2611 |
| | ) | |
| HOFFMANN-LA ROCHE, INC., ROCHE | ) | Hon. Marvin E. Aspen |
| LABORATORIES, INC., F. HOFFMANN- | ) | |
| LA ROCHE, LTD., ROCHE HOLDING | ) | |
| AG, ROCHE HOLDING, LTD., F. HOFFMAN- | ) | |
| LAROCHE, INC., DAVID SHANKER, M.D., | ) | |
| DERMATOLOGY CHICAGO d/b/a | ) | |
| DERMATOLOGY CSI, LAKESHORE | ) | |
| SURGICAL ASSOCIATES, LTD., CARDINAL | ) | |
| HEALTH FRANCE 404, CARDINAL HEALTH | ) | |
| PACKAGING SERVICES, MYLAN BERTEK | ) | |
| PHARMACEUTICALS, INC., BARR | ) | |
| LABORATORIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

This matter is before us on a motion for remand to state court for lack of subject matter jurisdiction filed by the Plaintiff, Stephen Livingston, and a motion to stay the proceedings pending transfer by the Judicial Panel on Multidistrict Litigation ("JPML") filed by Defendants Hoffman-La Roche Inc. and Roche Laboratories Inc. (collectively, the "Pharmaceutical Defendants"). In this action, originally filed in the Circuit Court of Cook County, Illinois on April 15, 2009, Livingston alleges that he suffered personal injuries as a result of using Isotretinoin, a medication used for the treatment of acne, under the names of Accutane,

-1-

Amnesteem, and Claravis. (*See, e.g.*, Compl. at 3-4, 11, 16.)

Livingston asserts claims for strict liability and negligence against the various Pharmaceutical Defendants (Compl. at 1-20) and medical negligence against his physician, Dr. Shanker, and his physician's employers, Dermatology CSI d/b/a Dermatology Chicago ("Dermatology Chicago") and Lakeshore Surgical Associates, LTD ("Lakeshore Surgical"). (Compl. at 21-23.). On April 29, 2009, the Pharmaceutical Defendants removed this case to federal court pursuant to 28 U.S.C. §§ 1332 and 1441, asserting federal subject matter jurisdiction on the basis of diversity of citizenship. (Not. of Rem. ¶ 3.) Believing that this action asserts claims that are similar to those at issue in MDL No. 1626, pending in the United States District Court for the Middle District of Florida, on April 20, 2009, the Pharmaceutical Defendants filed a Supplemental Notice of Related Action with the JPML, identifying this case as a potential "tag along act" to MDL No. 1626. (Def. Mem. at 3.) On May 19, 2009, the JPML issued a Conditional Transfer Order ("CTO") of this action. (*Id.*, Ex. B.) However, the order is not effective until it is filed in the Office of the Clerk of the United States District Court for the Middle District of Florida, and the filing of such an order is stayed if a party files a notice of opposition with the Clerk of the JPML. (*See id.*, Ex. B.) Livingston has filed an opposition to the CTO (*see* Not. of Hearing Session, June 18, 2009, *available at* http://www.jpml.uscourts.gov/Hearing_Info/Hearing_Order7-30-09.pdf), thereby staying the transmission of the CTO to the Middle District of Florida.

Livingston filed a motion to remand this action to state court on May 22, 2009, arguing that there is not complete diversity of citizenship. (Pl. Mot. ¶ 3.) Thereafter, the Pharmaceutical Defendants filed a motion to stay all proceedings, including the motion to remand. (Def. Mem.

at 1.) For the following reasons, we grant Livingston's motion to remand and deny the Pharmaceutical Defendants' motion to stay.

**DISCUSSION**

As an initial matter, we must decide which motion to address first. Although the JPML has issued a CTO, we retain full jurisdiction over this case until such time as the JPML files a transfer order in the Office of the Clerk of the Middle District of Florida. *See Ill. Mun. Ret. Fund v. Citigroup, Inc.*, 391 F.3d 844, 850-51 (7th Cir. 2004) (affirming the district court's remand of a case after the JPML issued a CTO, but before transmittal of the final order to the clerk of the transferee district and explaining that "[t]he pendency of a conditional transfer order 'does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.'") (quoting JPML Rule 1.5); *Terkel v. AT&T, Inc.*, No. 06 C 2837, 2006 WL 1663456, at *1 (N.D. Ill. June 9, 2006); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 845 (S.D. Ill. 2006). Accordingly, we have the discretion to grant a remand before deciding the motion to stay, even though the JPML has issued a CTO. *Rutherford*, 428 F. Supp. 2d at 845.

In addressing this issue, other district courts within the Seventh Circuit have adopted a three-step method to determine whether to address a motion to stay pending the JPML's decision to transfer before deciding a motion to remand. *See Rutherford*, 428 F. Supp. 2d at 845-46; *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001); *see also Bd. of Trs. of the Teachers' Ret. Sys. of the State of Ill. v. WorldCom, Inc.*, 244 F. Supp. 2d 900, 902-03 (N.D. Ill. 2006) (explaining that the three steps are inherent in the analysis of a motion to stay). First, we should "make a preliminary assessment of the jurisdictional issue." *Meyers*, 143 F. Supp. 2d at

1048; *Rutherford*, 428 F. Supp. 2d at 846. If, upon such a preliminary assessment, we think that removal to federal court was improper, we "should promptly complete [our] consideration and remand the case to state court." *Meyers*, 143 F. Supp. 2d at 1049. "If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Id.*; *see also WorldCom*, 244 F. Supp. 2d at 903. Finally, "[o]nly if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay." *Meyers*, 143 F. Supp. 2d at 1049; *see also WorldCom*, 244 F. Supp. 2d at 903.

Although the jurisdictional issues raised by the Pharmaceutical Defendants are somewhat difficult, they are not similar to issues presented by other cases in or likely to be a part of the MDL. The Pharmaceutical Defendants argue that the issues are similar to those presented in other cases in the MDL, citing to a case already decided by the MDL court, *Shellhammer v. Roche Labs. Inc.*, No. 07 C 2365, 2008 WL 2782689 (M.D. Fla. July 16, 2008) (rejecting defendants' assertion that fraudulent joinder warranted severing the claims against the non-diverse defendants). However, not only are the issues in *Shellhammer* distinct from those raised here, but the court's decision involved an examination of the individual facts of that case and the applicable state law. *Id.* at *3 (explaining that fraudulent joinder requires an analysis of the individual allegations made and whether they state a claim under the applicable state law). The MDL court did not issue a global decision regarding motions to remand in the *Shellhammer* decision; it decided the issues for that specific case. Similarly, if we declined to address the

motion to remand in this case, the MDL court would have to conduct the same case-by-case analysis as we would. *See, e.g.*, *Copeland v. Eli Lily & Co.*, No. 05 C 4318, 2005 WL 3533394, at *2 (W.D. Mo. Dec. 22, 2005). The Pharmaceutical Defendants' argument that the issue is better to be resolved by a single MDL court "overlooks the fact that fraudulent joinder analysis . . . depends largely on whether the forum state would sustain a cause of action against the allegedly fraudulently joined defendant." *Id.* Therefore, "there could be no single resolution of the fraudulent joinder issue by the MDL court since that court would be required to look at the separate law of each state from which one of its cases was transferred." *Id.* (further explaining that "[f]ar from fostering judicial economy, consolidation of motions to remand in the MDL court would require the [MDL court] to consider not only the malpractice law of several states, but also the current law on fraudulent joinder from the several Circuit Courts of Appeals"). After fully considering all jurisdictional issues, we are not convinced that this case presents issues similar enough to other cases in the MDL to justify deciding the motion to stay before the motion to remand.

**I. Motion to Remand**

Defendants can remove cases filed in state court to federal court pursuant to 28 U.S.C. § 1441(a) when 1) the plaintiff properly commenced the action in state court and 2) the federal court has original jurisdiction. *See Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 248 (7th Cir. 1981). A federal court has original jurisdiction where diversity of citizenship exists among all parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). "The defendant bears the burden of establishing removability, and all doubts about federal jurisdiction are resolved in favor of remand to state court." *Peirick v. Hooters of Am.*, No. 05 C 4391, 2005 WL

2171184, at *1 (N.D. Ill. Aug. 31, 2005); *see also Wilson v. The Master's Miracle, Inc.*, 06 C 6590, 2006 WL 163020, at *1 (N.D. Ill. Jan. 19, 2006) ("[A]ll doubts about federal jurisdiction are resolved in favor of remand to state court.") (quotations omitted); *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 549 (7th Cir. 2004) ("[T]he party seeking to invoke federal jurisdiction . . . bears the burden of demonstrating that removal is proper.").

Livingston asserts that there is not complete diversity of citizenship because he is an Illinois plaintiff and Dr. Shanker, Dermatology CSI, and Lakeshore Surgical ("forum Defendants") are Illinois defendants. (Mot. ¶ 3.) In response to Livingston's motion, the Pharmaceutical Defendants argue (1) that Livingston is actually a citizen of Ohio; (2) that he fraudulently joined the forum defendants; and (3) that we should sever the Illinois Pharmaceutical Defendants from the case because they are dispensable parties or because they were fraudulently misjoined. We address the arguments in turn.

## A. Livingston's Citizenship

Diversity of citizenship is determined at the time the lawsuit was filed. *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004) ("Whether § 1332 supplies subject-matter jurisdiction must be ascertained at the outset."); *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996). We "may properly look beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979); *see also United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). To determine an individual's citizenship for diversity purposes, we look to the state of the individual's domicile, which is based on where he is present and intends to stay. *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002); *Galva Foundry Co. v. Heiden*,

924 F.2d 729, 730 (7th Cir. 1991). When a person's domicile is unclear, we can consider the location of his residence, family, and personal belongings; and where he exercises his political rights, conducts his business and financial transactions, pays taxes, and has his driver's license. *See, e.g.*, *Pedersen v. Chi. Transit Auth.*, No. 96 C 1588, 1996 WL 328039, at *1 (N.D. Ill. June 11, 1996); *Abboud v. Nw. Home Servs., Inc.*, No. 90 C 141, 1990 WL 93345, at *2 (N.D. Ill. June 20, 1990); *see also McKnight v. Intercontinental Hotels Group PLC*, No. 06 C 2546, 2006 WL 2868905, at *2 (N.D. Ill. Oct. 3, 2006) ("[I]n determining a natural party's domicile, the court analyzes the totality of the circumstances, looking at factors such as current physical residence, place of employment, location of real property, voter registration, driver's license registration, and tax payments.").

Although Livingston has not stated under oath that he intends to remain in Illinois (*see* Def. Opp'n at 5; Def. Mem. at 6), the factors indicate that Livingston is a citizen of Illinois for diversity purposes. *See McKnight*, 2006 WL 2868905, at *2 (holding that the plaintiff's conduct established his intent to make his domicile Nicaragua, despite the fact that he never stated he intended to remain in Nicaragua and actually stated that he might return to Illinois some day). Livingston has lived in Illinois since 2006 and purchased a condominium in Chicago in October 2008. (Pl. Mem. ¶ 5.) He has been employed by William Blair & Company, located in Chicago since June 2006. (*Id.* ¶ 6.) Additionally, Livingston is registered to vote in Illinois, has an Illinois driver's license, and filed taxes in Illinois in 2008, the year before he filed this suit. (*Id.* ¶¶ 7-9.) In response, the Pharmaceutical Defendants submitted evidence demonstrating Livingston's ties to Ohio: he has had several addresses in Ohio, has been employed in Ohio, attended the Ohio State University, owns a car that is registered in Ohio, has registered to vote in

Ohio, has had two Ohio driver's licenses, and has opened telephone accounts with Ohio addresses. (Def. Resp. at 6, Ex. J.) We find this evidence unpersuasive. First, Livingston does not deny that he lived in Ohio, where he attended college. (Pl. Reply at 4.) The evidence submitted by the Pharmaceutical Defendants is consistent with that fact. Furthermore, nothing in those facts demonstrates that he intends to return to or remain in Ohio. To support its argument, Pharmaceutical Defendants cite *Galva Foundry Co.*, a case in which the Seventh Circuit concluded that the defendant was actually domiciled in Illinois despite the fact that he had moved to Florida, registered to vote in Florida, received a Florida driver's license, and listed his Florida address as his permanent address on his income tax returns. 924 F.2d at 730. The Seventh Circuit explained that the defendant's "center of gravity" remained in Peoria, Illinois and his attempt to establish his domicile in Florida was to get a better tax rate. *Id.* at 730-31. The Pharmaceutical Defendants have not offered evidence that Livingston is attempting to create a similar "aura of fraud" as the defendant in *Galva Foundry Co. Id.* at 730-31. Accordingly, we find that Livingston is domiciled in Illinois for the purposes of diversity jurisdiction. Therefore, Livingston is not diverse from Dr. Shanker, an Illinois citizen, or Dermatology CSI, an Illinois corporation.

**B. Fraudulent Joinder**

The Pharmaceutical Defendants argue that even if we find that Livingston is an Illinois citizen, we should deny his motion to remand because the forum Defendants were fraudulently joined to Livingston's complaint to defeat diversity jurisdiction. (Def. Opp'n at 8-11.) "Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). Thus, "[i]n

determining whether there is diversity of citizenship, parties fraudulently joined are disregarded." *Id.* Fraudulent joinder can be established in two ways: (1) by showing that "there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court," or (2) by demonstrating that there was actual fraud in the plaintiff's pleading of jurisdictional facts. *Id.* The Pharmaceutical Defendants did not allege that Livingston fraudulently pled the jurisdictional facts. Accordingly, they must show that "there is no possibility" that Livingston can state a cause of action against the forum Defendants. *Id.* This is a "heavy" burden. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). "The defendants must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.* (emphasis in original); *see also Kim v. Mazda Motor of Am., Inc,.*, No. 08 C 6358, 2009 WL 1258977, at *1 (N.D. Ill. Apr. 29, 2009); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006). In fact, the test for fraudulent joinder is even more favorable to the plaintiff than the standard for deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Rutherford*, 428 F. Supp. 2d at 847 (citing *Valentine v. Ford Motor Co.* No. 03 C 090, 2003 WL 23220758, at *4 (S.D. Ind. Nov. 21, 2003); *Hartley v. CSX Trasnp. Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)).

The Pharmaceutical Defendants first contend that Livingston's allegations against the forum Defendants cannot possibly state a claim because Livingston pled himself out of court by alleging "that the [P]harmaceutical [D]efendants negligently marketed, distributed, labeled, and promoted Accutane or isotretinoin products, and adequately warned no one, including the treating physician." (Def. Resp. at 10; Def. Mem. at 10-11.) Accordingly, the Pharmaceutical Defendants argue that because Livingston repeatedly alleges that they did not disclose the risks

of Accutane, his treating physician could not have breached any duty he owed Livingston. (*Id.*) We disagree that Livingston's allegations as to the Pharmaceutical Defendants obviate his claims against the forum Defendants. Livingston merely alleges that the Pharmaceutical Defendants "*inadequately* warned physicians, hospitals, pharmacies and patients" about Accutane's risks. (Compl. at 3 (emphasis added); *see also id.* at 5, 8, 10, 13, 15, 17-18, 19-20.) The allegations that the Pharmaceutical Defendants failed to adequately warn physicians does not eliminate the possibility that his treating physician had some knowledge of the risks, and therefore a duty to disclose such risks to Livingston.[1] *See Alegre v. Aguayo*, No. 06 C 5744, 2007 WL 141891, at

---

[1] To support their argument, the Physician Defendants stated that the court in *In re Rezulin Products Liability Litigation*, No. 00 C 2843, 2002 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002), found "fraudulent joinder because 'the main tenor of plaintiff's complaint is that Rezulin was an unsafe drug and that the manufacturers concealed its risks from the public [and] physicians . . . [thus] an entirely conclusory allegation that the physicians failed to warn of the risks of Rezulin is insufficient.'" (Def. Mem. at 11 (citing *Rezulin*, 2002 WL 31852826, at *2).) Although the *Rezulin* court found fraudulent joinder, its reasoning was based on the fact that the complaint did not provide sufficient notice to the physician defendants, not because the allegations against the physician defendants and the pharmaceutical defendants were inherently inconsistent to the point of prohibiting one cause of action. *See Rezulin*, 2002 WL 31852826, at *2 ("[P]laintiffs' claims against the physician defendants fail for the fundamental reason that they do not provide the physician defendants sufficient notice of the claims against them."). In fact, the court also explained that "[t]he fact that plaintiff's pleadings may be inconsistent is not fatal." *Id.* Further, "each plaintiff's assertion that his or her physician breached his duty to warn patients of known risks of taking the drug Rezulin is not necessarily refuted by other allegations in the complaints that pharmaceutical representatives falsely and fraudulently represented to physicians that the drug was in fact safe when the [d]efendants knew or should have known that Rezulin was unsafe." *Id.* No one has argued here that the forum Defendants were fraudulently joined because Livingston's complaint did not provide sufficient notice to the forum Defendants, and we refuse to find that his allegations were insufficient. Additionally, *Rezulin* is distinguishable because Livingston has only alleged claims of negligence and strict liability based on "inadequate warnings," whereas the plaintiffs in *Rezulin* alleged fraud via active concealment of the risks and misrepresentation of those risks. *Id.*; *see also Baisden v. Bayer Corp.*, 275 F. Supp. 2d 769, 762-63 (S.D. W. Va. 2003) ("In [*Rezulin*], the premise of the case against the non-diverse defendant(s) that they knew or should have known of the dangers is undercut, defeated, and made impossible by the claims of fraud and misrepresentation against the manufacturers, who allegedly prevented anyone from knowing the dangers.").

-10-

*4-5 (N.D. Ill. Jan. 17, 2007) (concluding that plaintiff's allegations against his treating physicians were not inconsistent with his allegations that the pharmaceutical defendants concealed the risks of Vioxx); *Melton v. Merck & Co.*, No. 06 C 45, 2006 WL 1543036, at *3 (E.D. Ky. June 1, 2006) (cited by *Alegre*) ("It is perfectly plausible that a drug manufacturer could engage in a pattern of concealing information about a drug's risks, and yet that reasonable Health Care Providers would still have known of the risks from the information that had come out."). The Pharmaceutical Defendants have not proven that there is "no possibility" of stating a claim against the forum Defendants. *See Gottlieb*, 990 F.2d at 329.

In further support of its argument that Livingston cannot state a claim against the forum Defendants, the Pharmaceutical Defendants point out that Livingston had not filed an affidavit and certificate of merit prepared by a physician as required by Illinois law for all medical malpractice claims. (*Id.* at 10 n.9 (citing 735 Ill. Comp. Stat. 5/2-622(a)(1)); Def. Mem. at 9-10 (citing *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000)).) Failure to attach this affidavit requires dismissal, but the Court has the discretion to dismiss without prejudice so the plaintiff may re-file in compliance with the statute. *Sherrod*, 223 F.3d at 613. Livingston has since filed the affidavit and report. (Dkt. No. 35.) Accordingly, he has fixed his mistake and we refuse to find fraudulent joinder for this delay.[2]

---

[2] Although the Pharmaceutical Defendants contend that Livingston's failure to include identifying information about the physician who certified the merit of his complaint fails to satisfy the requirements of 735 ILCS 5/2-622, such identifying information is no longer required. *See Hunt v. Nw.*, No. 03 C 50250, 2003 WL 22764871, at *1 (N.D. Ill. Nov. 20, 2003) ("While the express language relied on by defendants, and contained in the most recent version of section 2-622, does in fact state that the report must include the name and address of the health professional supplying the report, that language was expressly ruled to be unconstitutional on the basis of severability by the Illinois Supreme Court.") (citing *Best v. Taylor Mach. Works*, 179 Ill. 2d 367, 371, 689 N.E.2d 1057, 1061 (1997)); *see also O'Casek v. Children's Home and Aid Soc.*

Similarly, the Pharmaceutical Defendants' speculative suggestion that one of the forum Defendants, Lakeshore Surgical never treated Livingston (Def. Resp. at 10) is insufficient to establish fraudulent joinder. As discussed above, we must resolve all issues of fact in favor of Livingston. *See Rutherford*, 428 F. Supp. 2d at 847. Livingston's complaint states that Dr. Shanker was employed by, and an agent of, Lakeshore Surgical during the time Dr. Shanker treated Livingston. (Compl. at 21.) Although Lakeshore Surgical may have filed a motion to dismiss the complaint against them in the Cook County Circuit Court because it was not directly or indirectly involved in Livingston's treatment, they have not filed such a motion here and we are limited to the facts presented in the complaint. Accordingly, we refuse to find fraudulent joinder based on this speculative argument.

## C. Severance of the Claims Against the Forum Defendants

The Pharmaceutical Defendants have also asked us to sever the claims against the forum Defendants. (Def. Resp. at 11.) They suggest that the forum Defendants can be severed under Rule 21 because they are dispensable parties (*id.* at 11-13) or under the doctrine of "fraudulent misjoinder" (*id.* at 13-14).

## 1. Rule 21

In the event that we fail to find that Livingston fraudulently joined the forum Defendants, the Pharmaceutical Defendants argue that we should sever Livingston's claims against the forum Defendants so that we may retain jurisdiction over this case, pursuant to Rule 21 of the Federal

---

*of Ill.*, 229 Ill. 2d 421, 450, 892 N.E.2d 994, 1012 (Ill. 2008) (explaining that the legislature's 1998 amendments to § 5/2-622 did not constitute a reenacment of the provisions held unconstitutional in *Best*, but simply amended the pre-1995 version of the statute, which did *not* require identifying information of the health professional). Accordingly, Livingston's failure to identify the physician does not destroy his claims against the forum Defendants.

Rules of Civil Procedure. (Def. Resp. at 11.) Generally, "the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder of necessary parties." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 91, 126 S. Ct. 606, 614 (2005) (quotations omitted); *see also Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). Rule 21 provides that: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, *on just terms*, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21 (emphasis added). However, we may only drop claims against dispensable parties. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832, 109 S. Ct. 2218, 2223 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered.").[3] Before deciding whether or not the forum Defendants are dispensable parties, however, we must consider whether they were misjoined. *See, e.g.*, *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000) (observing that the district court's dismissal was erroneous because there was no misjoinder and, even if there were misjoinder, the remedy was not made on just terms as required by Rule 21).

A party is misjoined if it is not a proper party under Rule 20(a). *See Ramos v. Playtex Prods., Inc.*, No. 08 C 2703, 2008 WL 4066250, at *2 (N.D. Ill. Aug. 27, 2008); *Schwartz v.*

---

[3] Although the Pharmaceutical Defendants state that "[c]ourts may use Rule 21 to perfect diversity not only in suits originally filed in federal court, but also in those removed from state court" (Def. Resp. at 11), this mechanism is generally used to cure diversity defects for complaints originally filed in federal court, *see, e.g.*, *Soberay Mach. & Equip. Co. v. MRF Ltd.*, 181 F.3d 759, 763 (6th Cir. 1999), or when the plaintiff adds a non-diverse party after the defendants remove an otherwise diverse complaint to federal court, *see, e.g.*, *Smado v. Crawford Mfg. Co.*, 111 F.R.D. 415, 418 (N.D. Ill. 1986) (applying Rule 21 to drop a dispensable, non-diverse defendant who was added after the case was removed from state court to federal court).

*Graebel Van Lines, Inc.*, No. 05 C 4682, 2006 WL 1343533, at *1 (N.D. Ill. May 15, 2006) ("Because Rule 21 does not include a standard for proper joinder, courts use the permissive joinder standards contained in Federal Rule of Civil Procedure 20(a)."); *Stark v. Ind. School Dist. No. 640*, 163 F.R.D. 556, 563-64 (D. Minn. 1995). Rule 20(a) permits joinder of defendants if (1) the plaintiff asserts any "right to relief . . . against them . . . arising out of the same transaction, occurrence, or series of transactions or occurrences; and" (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The Pharmaceutical Defendants assert, in a separate section of their brief, that Livingston's allegations against the forum Defendants have "no relation" to the claims against them. (Def. Resp. at 14.) We disagree.

Although the relevant transactions are somewhat disparate, they are part of the same series of transactions or occurrences. *See Alegre*, 2007 WL 141891, at *6 (concluding that plaintiff's allegations that the pharmaceutical defendants inadequately disclosed the risks of Vioxx and that her physician prescribed an excessive amount of the drug were part of the same series of transactions or occurrences). The Pharmaceutical Defendants' alleged failure to disclose adequate warnings and negligent manufacture of Accutane and the forum Defendants' prescription of the drug are two factors that caused Livingston to ingest Accutane, which he claims caused inflammatory bowel disease. This connection is sufficient to establish that the allegations are part of the same series of transactions or occurrences. *Id.* Additionally, in a factually similar case, the Western District of Missouri explained that determining who is liable in cases such as Livingston's, which involve personal injury allegations against a pharmaceutical company and the plaintiff's physician, depends on a common question of fact – which

defendants had what information. *Copeland v. Eli Lilly & Co.*, No. 05 C 4318, 2005 WL 3533394, at *5 (W.D. Mo. Dec. 22, 2005) ("Since [the physician] could not have negligently withheld from [the plaintiff] that which was withheld from him by [the pharmaceutical company], the chain of communication – and any breaks in it – from the drug manufacturer to the patient is a common issue of fact."). The court held that the allegations arose from the same series of transactions or occurrences, involved a common question of fact, and were properly joined under Rule 20, thus requiring remand of the case to state court. *Id.* Similarly, deciding who, if anyone, is liable in Livingston's case will require a determination of which parties had information regarding Accutane's risks and whether they adequately disclosed that information. Because this determination involves a common question of law or fact and the allegations were part of the same series of transactions or occurrences, the claims were properly joined under Rule 20.

The Pharmaceutical Defendants argue that misjoinder is not actually required because "Rule 21 applies to the dismissal of properly-joined parties, as well as misjoined parties." (*Id.* (citing *Safeco Ins. Co. of Am. v. City of White House*, 36 F.3d 540, 546 (6th Cir. 1994) (rejecting plaintiff's argument that "Rule 21 pertains only to misjoined parties and does not authorize the dismissal of parties properly joined")).) Even if Rule 21 does not require actual misjoinder, we refuse to use it to sever the forum Defendants in the case at hand. Cases applying Rule 21 where there is no misjoinder do so because "'there are sufficient other reasons for ordering a severance.'" *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 560 n.5 (1st Cir. 2003) (quoting *Wyndham Assoc. v. Bintliff*, 398 F.3d 614, 618 (2d Cir. 1968)). We recognize that the Pharmaceutical Defendants will be inconvenienced if they are forced to litigate this case in state

court, in light of the pending cases against them in the MDL. However, this case is not like others applying Rule 21 to removal actions, which generally involve a plaintiff who waits until after the case is removed to federal court to add a non-diverse defendant, in an attempt to avoid removal. *See, e.g.*, *Smado*, 111 F.R.D. at 416. Here, Livingston initially chose to sue the forum Defendants and the Pharmaceutical Defendants in state court. Because all of the non-diverse defendants were parties to the original complaint and Livingston has not attempted to defeat removal by adding non-diverse defendants, there is no reason to use Rule 21 to retain jurisdiction.

**2. Fraudulent Misjoinder**

Finally, the Pharmaceutical Defendants ask us to sever the claims against the forum Defendants because Livingston "has fraudulently misjoined his claim against the non-diverse defendants with his products liability claims against the [P]harmaceutical [D]efendants." (Def. Resp. at 13.) In *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), the Eleventh Circuit first introduced the concept of "fraudulent misjoinder" when it severed claims against non-diverse Defendants where there was an "egregious" misjoinder of claims. *Id.* at 1360. It explained that "mere misjoinder" is not "fraudulent joinder," but that an attempt to join certain parties can be "so egregious as to constitute fraudulent joinder." *Id.* In *Tapscott*, two separate putative class-plaintiffs joined claims against two distinct defendants, while the only connection between the claims was that they were based on the same statute. *Id.* The court held that the plaintiffs' "attempt to join these parties [was] so egregious as to constitute fraudulent joinder." *Id.* Without fully explaining how Livingston's actions were egregious, the Pharmaceutical Defendants urge is to sever the claims against the forum Defendants using fraudulent misjoinder.

The Seventh Circuit has not had occasion to address the validity of the doctrine of fraudulent misjoinder as adopted in *Tapscott*. However, this doctrine has been highly criticized and rejected by other courts in the Northern District of Illinois and by courts in other districts of the Seventh Circuit. *See, e.g.*, *Wolf v. Kennelly*, 540 F. Supp. 2d 955, 962 (N.D. Ill. 2008) (approaching the doctrine with "caution" and declining to invoke the doctrine because "it is the state court, and not this court, who should determine whether [fraudulent] misjoinder exists here"); *Robinson v. Ortho-McNeil Pharm., Inc.*, 533 F. Supp. 2d 838, 842 (S.D. Ill. 2008) (declining to adopt the doctrine of fraudulent misjoinder because "jurisdiction must be strictly and narrowly construed" and only Congress may "enlarge the scope of federal jurisdiction," while the doctrine is a judicial "innovation" that enlarges the scope of federal jurisdiction); *Alegre*, 2007 WL 141891, at *5-6 ("With particular stress on the currently muddled state of fraudulent misjoinder jurisprudence and the resulting impact on ease of application of jurisdictional rules, the Court will follow *Rutherford's* well-reasoned lead in this case."); *Rutherford*, 428 F. Supp. 2d at 851 (finding that because the issue of whether state law claims are misjoined is an issue to be decided by a state court, "the *Tapscott* doctrine is an improper expansion of the scope of federal diversity jurisdiction by the federal courts"). For the reasons set forth by these courts, we similarly decline to adopt the doctrine of fraudulent misjoinder.

Moreover, even if we were to apply the doctrine in this case, considering our discussion regarding whether there was actually misjoinder under Rule 21, we would be unable to hold that the attempted joinder here was so egregious as to constitute fraudulent misjoinder. *See, e.g.*, *Alegre*, 2007 WL 141891, at *6 (explaining that even if the court were to apply the doctrine of fraudulent misjoinder, the defendants failed to establish misjoinder, nonetheless "egregious"

misjoinder). Under the doctrine of fraudulent misjoinder, mere misjoinder is not enough to justify severing the claims against the non-diverse defendants; something more is required. *Tapscott*, 77 F.3d at 1360. "Precisely what the 'something more' is was not clearly established in *Tapscott* and has not been clearly established since." *In re Bridgestone/Firestone, Inc.*, 260 F. Supp. 2d 722, 728 (S.D. Ind. 2003). Because the Pharmaceutical Defendants have not established that the claims against the forum Defendants were misjoined, they cannot establish that they were egregiously misjoined. Thus, even if we were inclined to adopt the doctrine of fraudulent misjoinder, we would not use it to sever the claims against the forum Defendants.

**II. Livingston's Request for Costs**

In his response to the Pharmaceutical Defendants' motion to stay, Livingston seeks to recover costs incurred as a result of the removal, pursuant to 28 U.S.C. § 1447(b). (Pl. Resp. at 16.) Although § 1447(b) does not provide for costs, § 1447© does. 28 U.S.C. § 1447© ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). However, Livingston did not provide any argument supporting his request for costs. The Supreme Court has held that, under § 1447©, "absent unusual circumstances, attorney's fees should not be awarded when the removing part has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 126 S. Ct. 704, 708 (2005); *see also Lott v. Pfizer, Inc.*, 492 F.3d 789, 792 (7th Cir. 2007). Livingston has not attempted to argue that the Pharmaceutical Defendants' decision to remove the case was "objectively unreasonable," and we refuse to make such arguments for him. Accordingly, we deny his request for an award of costs.

## CONCLUSION

For the reasons stated above, we grant Livingston's motion to remand and deny the Pharmaceutical Defendants' motion to stay.

_____
Honorable Marvin E. Aspen
United States District Judge

Date: August 6, 2009